**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **NICOLE SINGLETARY,** | * | |
| | * | |
| *Plaintiff,* | | |
| v. | * | Civil Case No: 1:23-cv-3435-JMC |
| **WALMART, INC.,** | * | |
| *Defendant.* | | |
| | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**<u>MEMORANDUM OPINION AND ORDER</u>**

This case stems from an incident on November 11, 2020, wherein Plaintiff was struck by an acrylic information sign ("fact tag") that fell while she and a store employee were removing a television from a display shelf at a Walmart store in Columbia, Maryland, owned and operated by Defendant, causing her to sustain injuries. Before the Court is Defendant's Motion for Summary Judgment, together with Plaintiff's Opposition and Defendant's Reply. (ECF Nos. 27, 28 and 29). No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). As set forth more fully below, Defendant's Motion (ECF No. 27) is DENIED.

## I.    BACKGROUND

On November 11, 2020, Plaintiff went to the Columbia, Maryland Walmart store on Dobbin Road. (ECF No. 28-1 at 2).[1] Plaintiff searched for a particular Samsung television that she ultimately found on display on a raised shelf along the back wall of the store. *Id*. at 6. Plaintiff also observed an acrylic sign with the information and specifications of the television sitting on

---

[1] When the Court cites to a particular page or range of pages, the Court is referring to the page numbers located in the electronic filing stamps provided at the top of each electronically filed document.

the shelf directly in front of the display, which she read to confirm the model of television. *Id.* at 7-8; *see also* ECF No. 27-3 (attaching photograph of the sign). Neither the acrylic sign (called a "fact tag") nor the shelf itself appeared to be broken in any way, and the sign was not askew or otherwise out of place. (ECF No. 28-1 at 7-8).

Plaintiff ultimately found Walmart employee Julia Bennett, whom she recognized from other visits to the store, to help her. *Id*. at 9. Ms. Bennett has worked for Walmart for 19 years, and has been a Team Lead (i.e. supervisor) at the Dobbin Road Walmart for five years. (ECF No. 27-4 at 2). Ms. Bennett and Plaintiff then went to the television on display where, according to Plaintiff, Ms. Bennett told Plaintiff she would have to help remove the television, as there were no additional associates in the department and it was too big to lift by herself. (ECF No. 28-1 at 10-11). Plaintiff agreed. *Id.*[2] Notwithstanding her enlisting Plaintiff's help with the television, Ms. Bennett testified that it was store policy that she could not lift more than fifty pounds from a store shelf by herself, and that policy required her to seek assistance from another employee before doing do. (ECF No. 28-3 at 2-3).[3]

Ms. Bennett testified that it was store policy that the acrylic "fact tag" in front of the television be bolted to the display shelf in two places. (ECF No. 28-3 at 4-5). Ms. Bennett further testified that she would have been the one responsible for bolting down the fact tag for the television. *Id*. at 9. Ms. Bennett explained that, as the supervisor in the electronics department, she checks or "normally checks" the fact tags every day because she has encountered instances

---

[2] Ms. Bennett recalls that it was Plaintiff who first offered to help her move the television given that there were no other employees present to help. (ECF No. 27-4 at 5). In any event, there is no dispute that Plaintiff voluntarily participated in helping to move the television with Ms. Bennett.

[3] Although she did not know the exact weight of the television, Ms. Bennett testified that it was over fifty pounds. (ECF No. 28-3 at 6).

when customers loosen the fact tags.  (ECF Nos. 27-4 at 7; 28-3 at 10-11, 13).  She has instructed other employees to do the same thing for safety reasons.  (ECF No. 27-4 at 7).

Notwithstanding these policies and practices, there was no specific testimony as to whether Ms. Bennett or another employee checked the fact tag for the television at issue as part of that normal routine prior to the events at issue.  There is video evidence that at least in the hour just prior to the incident, no Walmart employee specifically checked the fact tag at issue.  (ECF Nos. 28 at 3; 28-4).  Ms. Bennett testified that just prior to moving the television with Plaintiff, although she didn't know that the fact tag was not secured, she did not check to see that the fact tag was secured to the shelf but doesn't know why.  (ECF Nos. 27-4 at 6; 28-3 at 13).  She testified that just prior to moving the television, the fact tag appeared "the way it was supposed to look, as if it was bolted down" yet was not, in fact, bolted to the shelf. (ECF No. 28-3 at 9).  When Ms. Bennett and Plaintiff began to lift the television, it did not completely clear the fact tag on Plaintiff's side, causing the fact tag to fall and strike Plaintiff.  (ECF No. 27-4 at 5).[4]  Ms. Bennett also did not see any bolts in the area immediately after the incident.  (ECF No. 28-3 at 14-15).

Defendant argues based on the above facts, there is "no evidence of any unreasonably dangerous or defective condition, and in any event, the acrylic sign was open and obvious."  (ECF No. 27-1 at 4-5).  Defendant further asserts that "there is no evidence that Ms. Bennett, or any other Walmart associate, had notice of any alleged defect, particularly where the sign appeared in its normal condition and there is no evidence as to how or when it became unattached."  *Id*.  Finally, Defendant posits that "there is no evidence of any negligent act by the associate, nor is there any evidence that Walmart failed to properly manage, maintain and operate the store."  *Id*.  Thus,

---

[4] There is conflicting testimony as to what extent, if at all, Plaintiff lifted her side of the television, although the video appears to depict at least some elevation of the television off of its shelf by Plaintiff.  (ECF No. 28-4).

Defendant reasons, "Plaintiff is unable to demonstrate that Walmart breached any duty to Plaintiff, and therefore Walmart is entitled to summary judgment as a matter of law." *Id*.

As explained more fully below, the Court disagrees.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) requires the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute as to a material fact "is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593, 600 (D. Md. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A nonmoving party "opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)).

The Court is "required to view the facts and draw reasonable inferences in the light most favorable to" the nonmoving party. *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008) (citing *Scott v. Harris*, 550 U.S. 372, 377 (2007)). However, the Court must also "abide by the 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Heckman v. Ryder Truck Rental, Inc.*, 962 F. Supp. 2d 792, 799–800 (D. Md. 2013) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). Consequently, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330–31 (4th Cir. 1998).

### III.    ANALYSIS

An owner or occupier of land only has a duty to exercise reasonable care to "protect the invitee from injury caused by an unreasonable risk" that the invitee would be unlikely to perceive in the exercise of ordinary care for his or her own safety, and about which the owner knows or could have discovered in the exercise of reasonable care. *Casper v. Charles F. Smith & Son, Inc.,* 316 Md. 573, 582 (1989).  Although the business invitor has a duty to protect against unreasonably dangerous conditions, the business invitor is not an insurer of the invitee's safety. *Moulden v. Greenbelt Consumer Servs., Inc.,* 239 Md. 229, 232 (1965).  Like the owner, the invitee has a duty to exercise due care for his or her own safety.  This includes the duty to look and see what is around the invitee.  Accordingly, the owner or occupier of land ordinarily has no duty to warn an invitee of an open, obvious, and present danger. *Casper,* 316 Md. at 582.

In an action by a customer to recover damages resulting from an encounter with a dangerous condition in a store, "the burden is on the customer to produce evidence that the storekeeper created the dangerous condition or had actual or constructive knowledge of its existence." *Rawls v. Hochschild, Kohn & Co.,* 207 Md. 113, 119 (1955).  In some cases, such as those involving the alleged failure to detect a spill or foreign substance, a plaintiff satisfies this burden by producing so-called "time on the floor" evidence to establish that the spill/substance was on the floor for a sufficient amount of time such that the store owner should have known of it and remediated the risk. *See Maans v. Giant of Md.*, 161 Md. App. 620 (2005) (affirming trial court's grant of a motion for judgment in store's favor given the absence of such evidence at trial). But in other cases, even in the absence of direct evidence of "time on the floor" from plaintiff, there is nonetheless sufficient evidence that a reasonable juror could infer negligence on the part of the store owner.

For example, in *Dickey v. Hochschild, Kohn & Co.,* the plaintiff caught her heel between a stair tread and metal stripping that was insecurely fastened due to a loose screw, causing her to fall down the stairs. 157 Md. 448, 449 (1929). In reversing the trial court's finding for the store owner based on a lack of specific evidence of actual or constructive knowledge of the hazard and finding the issue to be a jury question, the court reasoned that the store should have anticipated that wear and tear on the stairs would at some point take a toll on the integrity of their construction such that ordinary care required it to "maintain some system of inspection which would discover that condition in time to remedy it before it resulted in injury to its customers." *Id.* at 452. The court was unwilling to exonerate the store based on lack of actual or constructive notice based on "time on the floor" evidence under such circumstances, holding instead that:

> [T]he condition of the step immediately after the accident was sufficient to warrant the inference (a) that its construction was defective in material or design, (b) that the loosened [metal] strap had never been properly fastened down, or (c) that [the store] had failed to make a reasonably careful inspection of the stairway.

*Id.* at 284; *see also Keye v. Red Roof Inns, Inc.*, No. WGC-07-2926, 2009 WL 10685426, at *8 (D. Md. May 20, 2009) (denying summary judgment notwithstanding no specific evidence of "time on the floor" where circumstances supported reasonable inference of premises owner's failure to maintain stairway). Stated otherwise, actual or constructive knowledge may well be required to prove liability, but only "*after* [the store] has used ordinary care to prevent or discover any such condition and it nevertheless occurs[.]" *Id.* at 283 (emphasis added).[5]

---

[5] Another way of analyzing *Dickey* is that in certain kinds of cases, it may be appropriate to allow circumstantial evidence of "time on the floor" where it supports a reasonable inference that the defect was present for a sufficient period of time to be discovered and remedied, such as where the nature of the hazard suggests it took some period of time to develop (e.g., a rusted component, a missing screw, a defect that arose from sustained wear and tear, etc.).

The Court finds the present case analogous to *Dickey* and *Keye*.  Unlike a spill or foreign substance, it was Walmart's responsibility and its policy to secure fact tags to display shelves by bolting them onto the shelf, including the shelf in question.  Further, based on past store experience, Ms. Bennett testified that the fact tags were normally checked every day because there had been occasions when customers had caused them to become unsecured.  The video demonstrates that no such checks were done for at least the hour before the incident, and Ms. Bennett testified that she did not check the fact tag just prior to attempting to lift the television.  Whether the nature and frequency of the Defendant's routine inspections to see that fact tags were adequately secured are sufficient, and whether Ms. Bennett's specific decision not to check the fact tag at issue just prior to attempting to lifting the television (after enlisting or allowing non-employee Plaintiff to assist) was reasonable are questions for the jury.

It is true that the exact circumstances of when and how the fact tag was in an unsecured state are not known, but, as in *Dickey*, there are circumstances present that support reasonable inferences by a jury that due care was not exercised by Defendant.  For example, given the absence of screws or other securing mechanism in the area immediate post-incident, along with Ms. Bennett's testimony that it was her responsibility in the first instance to secure the fact tag, a juror could conclude that constitutes a failure to exercise reasonable care in failing to secure the fact tag when it was installed on the shelf, especially in light of the Defendant's policy to secure fact tags for safety reasons.  Alternatively, given Defendant's experience with fact tags sometimes being loosened by customers, its corresponding practice to conduct inspections to detect just that situation, and the video demonstrating that no such inspections took place for at least an hour prior to the incident, a jury could reasonably decide that the inspection schedule should have been more frequent, should have been better documented, or both.  A jury could also reasonably infer a lack of due care based

7

on Ms. Bennett's failure to verify the fact tag was secure just prior to moving the television, especially when she enlisted or at least allowed a non-employee to assist in that effort who had little if any knowledge of the necessity to secure and verify the proper installation of fact tags.

To be sure, a jury might well conclude based on all the evidence that none of the above scenarios (or other scenarios) establish liability, but that is not for the Court to decide at this juncture.

Similarly, whether the condition was "open and obvious" so as to be avoidable by a reasonable patron is also typically a jury question. *See Bardroff v. Sanexen Water, Inc.*, No. 21-cv-03161-JMC, 2023 WL 3158672, at *5 (D. Md. Apr. 28, 2023) (denying the defendant's motion for summary judgment and explaining that "[d]etermining whether a condition presents an open and obvious danger is typically a fact-specific inquiry that usually should be left for the jury.") (quoting *Gatchell v. Walmart, Inc.*, No. 10-cv-1649-PWG, 2021 WL 1017396, at *6 (D. Md. Mar. 17, 2021) (citations omitted)). This is especially so given the nature of the hazard at issue, which is hardly within the common knowledge of the average shopper, and the difficulty in detecting it, as demonstrated by even Defendant's team lead, Ms. Bennett, in failing to do so. Ms. Bennett's participation in lifting the television might well put her on notice of the hazards commonly attendant in doing so (such as muscle strain or an injury incurred if the television itself slipped), but the Court is not prepared to rule as a matter of law that injury from an unsecured fact tag secondary to lifting a television is open and obvious.

The Court cautions that its ruling here today is done in the specific context of a summary judgment motion on the limited record before it. Should trial testimony and evidence sufficiently distinguish the facts from those in *Dickey* (such as a more robust record of routine inspections performed by Defendant or a more fulsome discussion of the nature of the hazard that would make the inferences described here unreasonable), the Court may well revisit these issues. Additionally,

8

it will be an uncommon case where departure from the typical requirement of specific evidence of actual or constructive knowledge is justified.

## IV.    CONCLUSION

Accordingly, Defendant's Motion for Summary Judgment (ECF No. 27) is DENIED.


Dated: <u>February 24, 2025</u>

_____ /s/
J. Mark Coulson
United States Magistrate Judge